1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**JUN 1 7 2015**

SEAN F. McAVOY, CLERK
_____DEPUTY
YAKIMA, WASHINGTON

3

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

8

9

10

| | |
|---|---|
| JANE DAILY, individually, and on behalf of her deceased spouse, JOHN WILSON DAILY, JR.<br><br>Plaintiff,<br><br>v.<br><br>KITTITAS VALLEY HEALTH AND REHABILITATION CENTER; EXTENDICARE HOMES, INC.; EXTENDICARE HOMES INC., DBA KITTITAS VALLEY HEALTH AND REHABILITAITON CENTER<br><br>Defendant. | No. CV CR-15-3061-LRS<br><br>**ORDER DENYING**<br><br>**MOTION TO REMAND** |

11

12

13

14

15

16

17      **BEFORE THE COURT** is Plaintiff's Motion To Remand The Case To The

18   Kittitas County Superior Court (ECF No. 6) pursuant to 28 U.S.C. §1447(c).  The

19

**ORDER DENYING**

**MOTION TO REMAND-**          **1**

court exercises its discretion to hear the motion without oral argument.  LR 7.1(h)(3)(B)(iii).

## I.   BACKGROUND

On March 12, 2015, Plaintiff Jane Daily individually, and on behalf of her deceased spouse John Daily, filed a civil complaint against Kittitas Valley Health and Rehabilitation Center (KVHRC), Extendicare Homes, Inc., and Extendicare Homes, Inc., dba Kittitas Valley Health and Rehabilitation Center, in Kittitas County Superior Court.  The Complaint seeks unspecified damages for common law negligence, for violations of Washington's Abuse of Vulnerable Adults Act, and for deceptive acts or practices under Washington's Consumer Protection Act. The Defendants were served with the Complaint on March 13, 2015.

On March 23, 2015, Defendants served a Request for a Statement of Damages and a First Request for Admissions on the Plaintiff.  Plaintiff responded on April 22 and 23, 2015, respectively.  In her response to the Request for Statement of Damages, the only definite answer Plaintiff provided was that she was not making claims for past or anticipated future wage loss.  Regarding the First Request for Admissions, Plaintiff denied that the amount in controversy *did not* exceed $75,000. (Emphasis added).

**ORDER DENYING**

**MOTION TO REMAND-**          **2**

1   On April 28, 2015, Defendants filed a Notice of Removal pursuant to 28

2   U.S.C. §§ 1332 and 1441. The Defendants removed the case on the basis of

3   diversity jurisdiction because: (1) KVHRC/Extendicare Homes, Inc. is a foreign

4   corporation operating within Washington State, whereas the Plaintiff is a

5   Washington State citizen; and (2) the amount in controversy exceeds $75,000.  On

6   May 13, 2015, Plaintiff moved to remand the case to Kittitas County Superior

7   Court on the grounds that this court lacks subject matter jurisdiction and the Notice

8   of Removal was untimely filed.

9   **II.   DISCUSSION**
    **A.** **There is complete diversity between Plaintiff as a citizen of Washington**

10  **State and Defendants as citizens of Delaware and Wisconsin.**

11      To remove a case from state to federal court, the federal court must have

    independent original jurisdiction. 28 U.S.C. 1441(a).  Here, Defendants claim this

12  court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a). When diversity

13  jurisdiction is the basis for removal to federal court, all parties must be citizens of

14  separate states ("completely" diverse). 28 U.S.C. §1441(b)(2). Diversity

15  jurisdiction exists when (1) the parties are citizens of different states and (2) the

16  amount in controversy exceeds $75,000. 28 U.S.C. §1332(a).

17      Per 28 U.S.C. 1332(c)(1), a corporation is a citizen of the state(s) in which it is

18  incorporated and in which it has its "principal place of business," usually its

19  corporate headquarters. *Hertz Corp. v. Friend*, 559 U.S. 77, 81 (2010) ("the phrase

**ORDER DENYING**

**MOTION TO REMAND-**            **3**

'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities...typically found at a corporation's headquarters"). Plaintiff contends KVHRC is a citizen of Washington State because its senior care facility is located in Ellensburg, Washington and therefore, because Plaintiff is a citizen of Washington State, there is no diversity of citizenship. Neither statutory nor case law holds that the location from which a corporation transacts business with its clients determines corporate citizenship. KVHRC is not a legal entity distinct from Extendicare Homes, Inc., but rather, Extendicare Homes, Inc. is merely "doing business as" KVHRC in Washington State. Therefore, the state of incorporation and principal place of business for KVHRC is identical to that of Extendicare Homes, Inc.. Extendicare Homes, Inc. is incorporated in Delaware and its corporate headquarters are in Milwaukee, Wisconsin. Wash. Corp. Reg. Detail, ECF No.1, "Exhibit C". Accordingly, KVHRC/Extendicare is a citizen of Delaware and Wisconsin for the purposes of diversity jurisdiction and removal.[1]

Plaintiff objects to the Defendants' Corporate Disclosure Statement because it is not admissible under the rules of evidence and because it does not provide any

---

[1]Although KVHRC and Extendicare Homes, Inc., constitute a single legal entity, they are referred to herein as "Defendants" in order to be consistent with the Complaint and with the Notice of Removal.

**ORDER DENYING**

**MOTION TO REMAND-**          **4**

information relevant to determining claims of citizenship. First, Defendants do not use the disclosure statement to substantiate their citizenship claims.  Secondly, although Plaintiff claims Defendants have not substantiated their citizenship claims with any evidence, the corporate registration and business licensing records submitted by Defendants are sufficient to establish their corporate citizenship. (See Ex. C to ECF No. 1 and Ex. B. to Declaration of Charles C. Huber, ECF No. 10).

Accordingly, there is complete diversity of citizenship between the parties.

**B. Defendants' Notice of Removal was timely and proper.**

Although 28 U.S.C. §1441 determines under what conditions defendants may remove a case to federal court, 28 U.S.C. §1446 establishes the procedures for removal.  §1446(b)(1) requires that a Notice of Removal be filed within 30 days after defendants receive a copy of the complaint. However, in cases where the complaint makes it appear the case is not removable, if defendants subsequently receive an "amended pleading, motion, order, or other paper" from which it can be ascertained that the case is removable, they have 30 days from the receipt of that "paper" to file a Notice of Removal. 28 U.S.C. §1446(b)(3).

As a result, three scenarios arise once a complaint has been filed: (1) "the case clearly is removable on the basis of jurisdictional facts apparent from the face

**ORDER DENYING**

**MOTION TO REMAND-          5**

of the complaint, i.e., complete diversity of citizenship;" (2) "the case clearly is not removable on the basis of jurisdictional facts apparent from the face of the complaint, i.e., lack of complete diversity"; or (3) "it is unclear from the complaint whether the case is removable, i.e., the citizenship of the parties is unstated or ambiguous." *Harris v. Bankers Life & Cas. Co*, 425 F.3d 689, 692 (9th Cir. 2005). Pursuant to §1446(b)(1), in scenario (1) cases, defendants have 30 days from receipt of the complaint to file their Notice of Removal. Pursuant to §1446(b)(3), in scenario (3) cases, if defendants subsequently receive a document that makes clear that removal jurisdiction is proper, they then have 30 days from receipt of that document to remove the case. *Id*.

**1. It was indeterminable from "the face" of the complaint whether the case was removable based on diversity jurisdiction because the amount in controversy was extremely vague.**

In *Harris*, 425 F.3d at 692, the Ninth Circuit Court of Appeals held that:

Notice of removability under §1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry.... If no ground for removal is evident in that pleading, the case is "not removable" at that stage....

In *Harris*, this meant the defendants, before filing a Notice of Removal, did not have to consult their business records which would have indicated a co-defendant's citizenship for purposes of diversity jurisdiction. 425 F.3d at 696. Although defendants need not supply information the plaintiff has not included in the

**ORDER DENYING**

**MOTION TO REMAND-**        **6**

complaint, they "must 'apply a reasonable amount of intelligence' to decide whether a case may be removed" based on the information contained in the complaint. *Vigil v. Waste Connections, Inc.*, 2015 WL 627877 at *3 (E.D.Cal. 2015).

Courts choose not to inquire "into the subjective knowledge of [a] defendant" for several reasons. First, they do not want to embroil themselves in the difficult task of determining a defendant's subjective knowledge. *Kuxhausen v. BMW Financial Services NA LLC*, 707 F.3d 1136, 1141 (2013). Next, they want to balance the burden of removal between defendants and plaintiffs. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006). If a defendant files a baseless notice of removal, he is subject to Fed. R. Civ. P. 11 sanctions. As a result, if a pleading is ambiguous regarding whether diversity jurisdiction is available, a defendant is unlikely to file for removal so as to avoid sanctions. This encourages plaintiffs who want to stay in state court to file ambiguous complaints. *Id.* To avoid this, §1441(b) is structured so that plaintiffs "assume the costs associated with their own indeterminate pleadings" by allowing defendants flexible windows in which to file notices of removal once they receive "papers" indicating that removal is appropriate. *Id.*

Here, the "four corners" of Plaintiff's complaint neither indicates that the amount in controversy exceeds $75,000 nor that it does not. The Complaint lists a

**ORDER DENYING**

**MOTION TO REMAND-**           **7**

variety of claims and requests recovery for all "economic and noneconomic damages…as allowed by law and as established according to proof at trial," including statutory damages, attorney's fees, and costs.  None of these requests, however, are accompanied by any sort of numerical estimate of damages; e.g. an estimate of the actual damages the plaintiffs suffered.  Furthermore, there is not enough detailed information provided in the Complaint from which the amount of damages sought can be intelligently assessed.  This makes the instant case a more compelling example of an indeterminate "scenario (3)" case than *Harris*, where defendants had in their possession specific information directly related to the jurisdictional issues in the case. 425 F.3d at 689-90. Here, Defendants had little besides their general knowledge of cases in the same legal field to guide their appraisal of the amount in controversy.

Plaintiff contends the Complaint contained enough information for Defendants to know whether the case was removable such that their Notice of Removal should have been filed within 30 days of March 15, 2015.  Plaintiff directs the Court's attention to the Notice of Removal where Defendants speculate that "based on the allegations in the complaint, plaintiff will seek damages… in excess of $75,000" and that "cases of this nature regularly involve claims in excess of $100,000."  Plaintiff maintains this demonstrates Defendants knew from the Complaint alone that the amount in controversy is over $75,000.

**ORDER DENYING**

**MOTION TO REMAND-**          **8**

This argument conflates two nearly related issues: (A) whether pursuant to Section 1446(b)(1), the information *"on the face" of the complaint* was sufficient to require Defendants to file a Notice of Removal within 30 days of receiving the Complaint; and (B) whether there was sufficient information *in any non-frivolous form before the court* warranting removal based on diversity jurisdiction pursuant to 28 U.S.C. §1441 and §1332. For the purposes of (A), the Defendants were not required to rely on their subjective knowledge or to provide information outside the four corners of the Complaint, e.g. that "cases of this nature regularly involve in excess of $100,000." *Harris*, 425 F.3d at 692. For the purposes of (B), however, Defendants were entitled to utilize their subjective knowledge and information outside the Complaint to estimate the amount in controversy in light of the Complaint. Therefore, that Defendants used their subjective knowledge in their Notice of Removal does not suggest there was sufficient information "on the face" of the Complaint to require a Notice of Removal be filed within 30 days of Defendants' receipt of the Complaint.

The Complaint did not contain sufficient information to satisfy 28 U.S.C. §1446(b)(1). Thus, Defendants remained eligible to file a Notice of Removal in the event they received a "paper" substantiating that the amount in controversy was over $75,000. 28 U.S.C. §1446(b)(3).

**ORDER DENYING**
**MOTION TO REMAND-**          **9**

2. **There was sufficient new information in the Plaintiff's Response to the Defendants' First Request for Admissions and in the Plaintiff's Statement of Damages to support removal.**

Plaintiff argues that her Response to Defendants' Request for a Statement of Damages and her Response to Defendants' First Request for Admissions (RFA) contained no information that was not already in the Complaint. Therefore, she contends it is not a "paper" from which Defendants were able to ascertain that the case had become removable. §1446(b)(1).

For purposes of §1446(b)(3), the RFA qualifies as a "paper," *Hines v. AC & S, Inc.*, 128 F. Supp. 2d 1003, 1005 (N.D.Tex. 2001), and the information it contained was sufficiently new such that the 30 day Notice of Removal period commenced on April 25, 2015. Before receiving the RFA, Defendants knew from the "face" of the Complaint that Plaintiff was: (1) claiming damages under common law and under RCW 74.34 and 19.83, (2) that the damages/amount in controversy would be for some amount of money, and (3) that the amount of money might be determined in several ways, including demonstration at trial. On the strength of this information alone, Defendants could not reasonably know whether the amount in controversy would be more or less than $75,000. This is clearly a "scenario (3)" case of indeterminacy. However, because in the RFA, Plaintiff "denied [that she was] not seeking damages below $75,000, " this made it sufficiently clear and ascertainable, in light of the nature of her claims, that she is

**ORDER DENYING**

**MOTION TO REMAND-**          **10**

1  seeking damages in excess of $75,000. Considering that a plain reading of the

2  RFA indicates the amount in controversy is over $75,000, and the aim of §1446(b)

3  is to hold plaintiffs accountable for vague pleadings, this court finds the RFA

4  constitutes a "paper" that advanced Defendants knowledge regarding removability

5  under §1446(b)(3), and therefore, Defendants' Notice of Removal was timely filed.

6  **C. The ADR Agreement does not prevent defendants from removing the case to federal court.**

7  Plaintiff argues the Alternative Dispute Resolution (ADR) agreement that

8  Defendants submitted with their Notice of Removal leaves this court "with no

9  jurisdiction to act."

10  "The prevailing rule is clear" that when a *valid* forum selection clause

11  *exclusively mandates* a specific jurisdiction for litigation, e.g. state versus federal

12  court, then the district court will remand to the specified court. *Docksider, Ltd. v.*

13  *Sea Technology, Ltd.*, 875 F.2d 762 (9th Cir. 1989) (affirming a ruling that the

14  district court "lacked subject matter jurisdiction on the basis of [a] forum selection

15  clause"); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 511 (9th Cir.

16  1988); *Global Concierge Holdings v. Charbo*, 2013 U.S. Dist. LEXIS 170437

17  (C.D.Cal. 2013).  The instant case, however, is distinguishable from this line of

18  precedent on two accounts: (1) there is no forum selection clause on record, but

19  rather, an "Alternative Dispute Resolution Agreement;" and (2) the court to which

**ORDER DENYING**
**MOTION TO REMAND-**        **11**

1  this case would be remanded is not the forum mandated by the ADR Agreement.

2  ADR Agreement, ECF No. 8 §4. In the above cases and those cited by Plaintiff, the

3  federal district court remanded the cases to the forum specified by the forum

4  selection clause.  Here, Plaintiff would have this court remand to Kittitas County

5  Superior Court, despite the ADR agreement specifying that a private

6  mediator/arbitrator will resolve "covered disputes" between the parties to the

7  agreement.  ADR Agreement, ECF No. 8 §4. The ADR agreement is irrelevant to

8  the propriety of this court's removal jurisdiction. Therefore, the agreement need

9  not be consulted at this juncture.  The parties may move this court to compel

   arbitration as they see fit and this court will determine which claims are subject to

10  binding arbitration as opposed to judicial resolution.

11

12  //
    //
13  //
    //
14  //
    //
15  //
    //
16  //
17  //
    //
18  //
19

**ORDER DENYING**

**MOTION TO REMAND-**          **12**

## III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand (ECF No. 6) is **DENIED**.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this order and provide copies to counsel of record

**DATED** this _17_ day of June, 2015.

LONNY R. SUKO
SENIOR U. S. DISTRICT COURT JUDGE

**ORDER DENYING**

**MOTION TO REMAND-**        **13**